```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
                                 :
K. C., ET AL.
                                 :

    v.                           :  Civil Action No. DKC 2006-2928

                                 :
BOARD OF EDUCATION FOR
 MONTGOMERY COUNTY PUBLIC        :
 SCHOOLS, ET AL.
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case, brought under the Individuals with Disabilities Education Act, is the motion of Plaintiffs to supplement the administrative record and for additional discovery. (Paper 7). Defendants, the Board of Education for Montgomery County Public Schools (MCPS) and Jerry D. Weast, in his official capacity as Superintendent of MCPS, oppose this motion. The issues are briefed fully and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will deny Plaintiffs' motion.

**I.  The Individuals with Disabilities Education Act**

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and accompanying regulations, 34 C.F.R. § 300 *et seq.*, require all states that receive federal funds for education to provide each child between the ages of three and twenty-one, who has a disability, with a free and appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). Maryland's

regulations governing the provision of a FAPE to children with disabilities in accordance with the IDEA are found at Md. Code Regs. 13A.05.01.

The FAPE guaranteed by the IDEA must provide a disabled child with meaningful access to the educational process. *See Bd. of Educ. of the Henrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 192 (1982). The FAPE must be reasonably calculated to confer "some educational benefit" on the disabled child. *Id.* at 207. The benefit must also be provided in the least restrictive environment appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers. 20 U.S.C. § 1412(a)(5)(A); *see also* 34 C.F.R. § 300.550. The IDEA does not require that a school district provide a disabled child with the best possible education, *Rowley,* 458 U.S. at 192, or that the education maximize each child's potential, *see Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1001 (4th Cir. 1997), *cert. denied*, 522 U.S. 1046 (1998). The benefit conferred, however, must amount to more than trivial progress. *See Reusch v. Fountain,* 872 F. Supp. 1421, 1425 (D.Md. 1994) (*Rowley's* "'some educational benefit' prong will not be met by the provision of de minimis, trivial learning opportunities.") (citing *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 635 (4th Cir. 1985)).

To assure delivery of a FAPE, the IDEA requires a school district to provide an appropriate Individualized Education Program ("IEP") for each child determined to be disabled.  20 U.S.C. § 1414(d).  That IEP is formulated by a team ("IEP Team") consisting of the parents or guardian of the child, a representative of the school district, the child's regular and special education teachers, an individual who can interpret results of evaluations of the child, and, when appropriate, the child himself or herself.  20 U.S.C. § 1414(d)(1)(B); Md. Code Regs. 13A.05.01.07(A).  The IEP must state the student's current educational status, annual goals for the student's education, the special educational services and other aids that will be provided to the child to meet those goals, and the extent to which the child will be "mainstreamed," i.e., spend time in regular school environments with non-disabled students.  20 U.S.C. § 1414(d)(1)(A).

The IDEA provides a series of procedural safeguards "designed to ensure that the parents or guardian of a child with a disability are both notified of decisions affecting their child and given an opportunity to object to these decisions." *MM ex rel. DM v. Sch. Dist. of Greenville County,* 303 F.3d 523, 527 (4th Cir. 2002) (internal quotation marks and citation omitted); *see also* 20 U.S.C. § 1415.  Among those safeguards, a parent must be provided prior written notice of a decision to propose or change the educational placement of a student.  Md. Code Regs. 13A.05.01.13(B).  A parent

3

may also request a meeting at any time to review and, as appropriate, revise the student's IEP.  Md. Code Regs. 13A.05.01.08(B)(3).

If the parents are not satisfied with the IEP, they may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6).  After such a complaint has been received, the parents also are entitled to request a due process hearing conducted by the state or local educational agency. 20 U.S.C. § 1415(f).  In Maryland, the Maryland Office of Administrative Hearings conducts the due process hearing.  Md. Code Ann., Educ. § 8-413; Md. Code Regs. 13A.05.01.15(C)(1).  Any party can then appeal the administrative ruling to federal or state court. Md. Code Ann., Educ. § 8-413(h).

When a FAPE is not provided to a disabled student, the student's parent may place the child in a private school and then seek tuition reimbursement from the state.  *See Sch. Comm. of Burlington v. Dep't of Ed.,* 471 U.S. 359, 369-70 (1985).  The parent will recover if (1) the placement proposed by the state was inadequate to offer the child a FAPE, and (2) the private education services obtained by the parents were appropriate to the child's needs.  *Id.* at 370.

4

**II.  Background**

K.C. ("KC") is a thirteen-year-old child who has been diagnosed with multiple disabilities.  In this action, Plaintiffs seek reimbursement for private school tuition and related expenses from August 2005 through the end of the 2005-2006 school year.  KC attended special education programs offered by MCPS through the 2003-2004 school year, when she was a fifth-grade student and was taught by Susan B. Stevens.  For the 2004-2005 and 2005-2006 school years, KC was home schooled.  She also received additional part-time special education instruction at a private school, the Harbour School, beginning in August 2005 at her parents' expense.

IEP team meetings for KC were held on April 27, 2004 for the 2004-2005 school year and on July 16, 2005 for the 2005-2006 (paper 1 at 5, 8).  At each IEP meeting, Defendants offered an IEP based on placing KC in a diploma bound program at Lee Middle School.  (*Id.*).  Plaintiffs rejected both of these IEPs because they believed that a hybrid of life skills instruction and diploma bound instruction, which was not available at Lee Middle School, was necessary for KC.  Plaintiffs initiated administrative proceedings under IDEA seeking to recover tuition and other costs associated with KC's classes at the Harbour School, which ultimately resulted in a hearing before Administrative Law Judge Wayne A. Brooks, held between April and July 2006.  Judge Brooks issued a written decision on August 9, 2006, concluding that Plaintiffs' rights

under IDEA were not violated, and that Plaintiffs were not entitled to compensation for tuition paid at the Harbour School. Plaintiffs have filed this case challenging Judge Brooks's findings and conclusions.

The additional evidence with which Plaintiffs seek to supplement the administrative record arose during an August 3, 2006 meeting of KC's IEP team for the 2006-2007 school year. Plaintiffs allege that at this meeting, Ms. Stevens "stated that the child had not made any progress during the 2005-2006 school year." (Paper 1, at 10 ¶ 84). Plaintiffs describe more context for this statement in their motion to supplement the administrative record: "[d]uring a break in the IEP meeting, Ms. Stevens picked up and reviewed [KC]'s Harbour School IEP. Without solicitation she opined that it was clear that [KC] was not making progress at the Harbour School." (Paper 7, at 7). Plaintiffs contend that this evidence is relevant because it contradicts Ms. Stevens's testimony and because it "raises questions regarding whether a high school diploma track . . . was an appropriate proposal under the IDEA and Maryland law." (*Id.*). Plaintiffs also request authorization to conduct additional discovery based on this statement. (*Id.*).

**III. Analysis**

Pursuant to 20 U.S.C. § 1415(i)(2)(C), a court deciding an action brought under IDEA "shall receive the records of the administrative proceedings; *shall hear additional evidence at the*

6

*request of a party*; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." (Emphasis added). The United States Court of Appeals for the Fourth Circuit has adopted a strict interpretation of what evidence will qualify for admission as "additional evidence" under this provision:

> A lax interpretation of "additional evidence" would "reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial de novo." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 997 (1st Cir. 1990), *cert. denied*, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). Therefore the exclusion of "testimony from all who did, or could have, testified before the administrative hearing" would be "an appropriate limit in many cases." *Burlington* [*v. Dep't of Educ.*], 736 F.2d [773,] 790 [(1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985)].

*Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998) (adopting generally the approach to "additional evidence" set out in *Burlington*). Evidence with which a party seeks to supplement the administrative record must also be relevant. As the *Burlington* court stated:

> [t]he reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning *relevant events* occurring subsequent to the administrative hearing.

*Burlington*, 736 F.2d at 790 (emphasis added).  The Fourth Circuit has not considered the propriety under IDEA of evidence of the student's academic progress after the IEP in question was formulated or after the administrative hearing.  Courts that have considered this question have articulated a persuasive rationale for declining to admit such evidence, in part because it is rarely relevant.  *See, e.g.*, *A.S. v. Trumbull Bd. of Educ.*, 414 F.Supp.2d 152, 170-71 (D.Conn. 2006)(citing cases and concluding that "any evidence regarding the [student]'s recent progress will have at best only a tangential bearing on the relevant question[,] . . . whether the Board offered Plaintiffs a free appropriate public education during the [relevant] school year."); *J.R. v. Bd. of Educ. of City of Rye Sch. Dist.*, 345 F.Supp.2d 386, 396-97 & n.13 (S.D.N.Y. 2004) ("*ex post* information about [the student's] subsequent progress. . . [is] irrelevant to the inquiry about whether the District's IEP was reasonably calculated to enable her to receive educational benefits in the . . . academic year [at issue].").

The evidence with which Plaintiffs seek to supplement the administrative record is not relevant to any material issue in this case.  Plaintiffs claim that this evidence tends to show that the IEP for 2005-2006 was not a FAPE, because it relied on placement in a diploma bound program.  The critical question as to whether the IEPs constituted a FAPE is whether KC would have derived some

8

educational benefits from the IEPs, if they had been implemented. *See A.K. v. Alexandria City Sch. Bd.*, ___ F.3d ___, No. 06-1130, 2007 WL 1218204, at *1 (4th Cir. April 26, 2007) (quoting *Rowley*, 458 U.S. at 207). Plaintiff's additional evidence concerns KC's subsequent progress, after the IEPs were offered, in a different program, and are not relevant to whether KC would have received an educational benefit from the IEPs that Defendants offered.

It is not clear whether Ms. Stevens's observation indicates, as Plaintiffs claim, an opinion that KC's lack of progress at Harbour School in 2005-2006 would preclude her from readiness for a diploma track program in 2006-2007. Regardless, the issue of the appropriate placement for KC in the upcoming school year is not before the court. KC's progress at Harbour School, where she did not enroll until August 2005, has little or no relevance in terms of her readiness for a diploma track program in the prior academic year, 2004-2005, or in the same year, 2005-2006, because her forward-looking IEP for each of those years was prepared based on her prior educational progress and needs.

Plaintiffs rely heavily upon *Justin G. ex rel. Gene R. v. Board of Education of Montgomery County, Maryland*, 148 F.Supp.2d 576, 584-85 (D.Md. 2001), arguing that testimony regarding subsequent academic achievement is relevant and admissible as "additional evidence" in an action brought under IDEA. *Justin G.*, however, involved a substantially different situation in terms of

9

the relevance of evidence of subsequent academic achievement. The *Justin G.* court determined that the school district had committed a procedural violation of IDEA with respect to one of the school years at issue, *id.* at 583-84, and thus reached the question of whether the private school placement selected by his parents was adequate. With respect to this limited question, the court considered additional evidence, pursuant to 20 U.S.C. § 1415(i)(2)(C), consisting of Justin's subsequent successful placement by the school district in the same program. *Id.* at 584-85. The court did not, however, mention this evidence of subsequent academic achievement in its discussion of the adequacy of the IEP provided by the school district in years where there had been no procedural violation of IDEA. *See id.* at 587-88.

Plaintiffs in this case seek to admit evidence of a lack of success in a subsequent placement in a *different* program from that recommended in the IEP as evidence that the IEP's placement was not appropriate. Whatever relevance subsequent placement in the *same* program had under the circumstances of *Justin G.*, a lack of subsequent success in a *different* program is not relevant to whether the placement suggested in KC's IEP was appropriate. Any lack of progress KC may have suffered at Harbour School does not tend to make it appreciably more or less likely that she would have gained an educational benefit from placement at Lee Middle School as recommended by her IEP.

10

Plaintiffs also claim that Ms. Stevens's statement at the August 3, 2006 IEP meeting undermines the credibility of the testimony Ms. Stevens offered during the earlier administrative hearing, but any contradiction is too weak to justify the admission of this evidence.  In rendering his decision based on the administrative hearing, Judge Brooks relied upon Ms. Stevens's testimony about KC's progress in fifth grade during the 2003-2004 school year.  Judge Brooks stated that, "Ms. Stevens, the Child's fifth grade class room teacher, provided at the hearing a thorough account of the information that she provided the April 2004 IEP Team regarding the Child's progress and opined that the Child had received educational benefit over the course of the 2003-2004 school year." (Paper 1, Ex. A, at 31).  There is no basis for Plaintiffs' contention that Ms. Stevens's alleged observation as to KC's progress at the Harbour School as of August 3, 2006 contradicts or otherwise undermines the credibility of the testimony of Ms. Stevens as Judge Brooks summarized it.  There is no apparent contradiction between testimony of academic progress in the 2003-2004 school year, and even testimony of subsequent progress, with a later conclusion that no more progress was being made by the end of the 2005-2006 school year.

In addition, admission of evidence regarding Ms. Stevens's alleged statements at the August 3, 2006 IEP meeting to contradict her testimony at the earlier administrative hearing would not be

11

permissible under the circumstances of this case. In order to preserve the significance of the administrative hearing, embellishment of testimony presented at the administrative hearing is generally not permitted, and "the exclusion of 'testimony from [those] who did . . . testif[y] before the administrative hearing' . . . [is] 'an appropriate limit in many cases.'" *Springer*, 134 F.3d at 667 (quoting *Burlington*, 736 F.2d at 790). Plaintiffs have not clearly indicated why this testimony could not have been elicited when Ms. Stevens testified at the administrative hearing. The administrative hearing was held over several days between April 24, 2006 and July 10, 2006. (Paper 1, Ex. A, at 1). Most of the 2005-2006 school year was complete at the time of the administrative hearing. Plaintiffs provide no explanation for failing to present Ms. Stevens with KC's educational records from the Harbour School for most of the 2005-2006 academic year at that time and ask her whether these records reflected adequate progress to warrant KC's placement in a diploma bound program.

Plaintiffs also request discovery based on Ms. Stevens' alleged statement at the August 3, 2006 IEP Team meeting, arguing that broader discovery than is otherwise authorized in an IDEA case could yield additional relevant information. Plaintiffs have offered no basis for the relevance of Ms. Stevens' alleged statement about KC's academic progress after the most recent IEP at issue in this case was developed, and they have made no suggestion

12

as to the type of additional evidence they seek to discover or how this evidence could be relevant.  Accordingly, this request will be denied.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion seeking to supplement the administrative record and seeking additional discovery will be denied.  A separate Order will follow.

                                                        /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge